UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GOAT HILL HOMEOWNERS ASSOC., INC., <br><br> Plaintiff, <br><br> v. <br><br> KING COUNTY, et al., <br><br> Defendants. | CASE NO. C09-0949JLR <br><br> ORDER ON MOTIONS |

## I. INTRODUCTION

Before the court is Plaintiff Goat Hill Homeowners Association's ("Goat Hill") motion to reverse and vacate the May 28, 2009 Report and Decision of the King County Hearing Examiner ("Hearing Examiner's Decision") (Dkt. # 22) and Goat Hill's Land Use Petition ("LUPA") (Dkt. # 71) seeking to declare Defendant Mohammed Manuchehri's reasonable use exception ("RUE") null and void. Having reviewed the Hearing Examiner's Decision, the motions, the papers filed in support and opposition,

and the balance of the administrative record, the court DENIES Goat Hill's motion to reverse and vacate (Dkt. #22) and DENIES Goat Hill's LUPA petition (Dkt. # 71).

## II. BACKGROUND

This case arises out of a decision by the King County Department of Development and Environmental Services ("DDES") to grant Mr. Manuchehri a RUE to construct a single-family residence near Kirkland, Washington. (Notice of Removal DDES Report and Decision ("Hearing Examiner Decision") (Dkt. # 1) ¶¶ 1, 8-9.) In the absence of a RUE, Mr. Manuchehri would not have been able to develop his property as it is designated as a critical habitat area. When sensitive area buffers and building setbacks that apply to critical habitat areas are taken into account, Mr. Manuchehri's site is rendered undevelopable. The inability to develop the land could constitute an unconstitutional taking. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (noting that that "there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking"). The issuance of a RUE to Mr. Manuchehri to construct a minimally impactful house avoids the possibility that King County will be liable for an unconstitutional taking of his property. There are, however, several requirements that must be met before such a RUE is issued.

Mr. Manuchehri applied for and was granted a RUE on November 7, 2007,[1] which the DDES subsequently affirmed and reissued on August 12, 2008 in a form nearly identical to the original version. (*Id.* at ¶¶ 18-19.) The RUE permits Mr. Manuchehri to construct a single-family residential development with a 2,940 square-foot house footprint and a 755 square-foot onsite access driveway. (*Id.* at ¶ 8.) The hearing examiner found that this resulted in a 3,695 square-foot total site disturbance. (*Id.* at ¶ 8, 31.)

Goat Hill appealed the issuance of the RUE and a hearing examiner conducted a four-day public hearing in April 2009. (*Id.* at ¶ 16.) At the conclusion of the hearing, the examiner affirmed the issuance of Mr. Manuchehri's RUE but added some additional conditions. (*Id.* at 21.) Goat Hill appealed that decision to the King County Superior Court and King County removed the case to this court pursuant to LUPA. *See* RCW 36.70C.130.

### III.   ANALYSIS

**A.   LUPA Standard of Review**

Washington's LUPA, chapter 36.70C RCW, provides a statutory standard for review of land use petitions. The court applies the standard of review set out in LUPA to a land use decision based on the record created before the hearing examiner. RCW 36.70C.120(1); RCW 36.70C.130; *Westside Bus. Park, LLC v. Pierce County*, 5 P.3d

---

[1] The original November 2007 RUE appears to have been withdrawn in order for DDES to perform a State Environmental Policy Act review.

713, 715 (Wash. Ct. App. 2000). Under RCW 36.70C.130, an appellate court may grant relief from a land use decision only if the party seeking relief has carried its burden of establishing that one of the following standards has been met:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

The court reviews the hearing examiner's findings of fact for substantial evidence – evidence sufficient to persuade a fair-minded person of the order's truth or correctness – and reviews issues of law de novo. *Benchmark Land Co. v. City of Battle Ground*, 49 P.3d 860, 864 (Wash. 2002); *City of Univ. Place v. McGuire*, 30 P.3d 453, 456 (Wash. 2001). When reviewing an asserted error under LUPA, however, the court must give deference to the legal determinations of the hearing examiner as the local authority with expertise in land use regulation, unless the examiner's construction of law is contrary to

the statute's plain language. RCW 36.70C.130(1)(b); *Sylvester v. Pierce County*, 201 P.3d 381, 387 (Wash. Ct. App. 2009).

**B.  Vested Rights Doctrine**

Washington has a well-established doctrine that a landowner has a "vested right" to have a building permit considered under the zoning and other land-use regulations that were in effect the day that the permit was filed. *Ass'n of Rural Residents v. Kitsap County*, 4 P.3d 115, 119 (Wash. 2000); *West Main Assocs. v. City of Bellevue*, 720 P.2d 782, 785 (Wash. 1986). Because rights are fixed on the date of application, an applicant cannot claim the advantage of favorable amendments to land-use restrictions adopted after that date. *Mayer Built Homes, Inc. v. Town of Steilacoom*, 564 P.2d 1170, 1174-75 (Wash. Ct. App. 1977). This doctrine has been broadly applied. *See, e.g., Mercer Enters v. City of Bremerton*, 611 P.2d 1237, 1239 (Wash. 1980) (holding that rights vested when a building permit application was filed that substantially complied with local ordinances, despite the fact that the application would have to be modified to comply fully).

**C.  Goat Hill's Motion to Vacate**

Goat Hill moves to vacate the hearing examiner's decision on the basis that the decision retroactively applied a 2008 King County Code provision, KCC 21A.24.070, to land use decisions that had been made before the enactment of the new code provisions. (Mot. at 1.)

1. <u>2004 Critical Area Ordinance Provision, KCC 21A.24.070 ("2004 CAO")</u>

On the date of the RUE application, the date on which the RUE was granted, and the date on which the RUE was affirmed and reissued, the applicable King County Code Critical Areas Ordinance ("CAO") provision, KCC 21A.24.070.B.4, stated as follows:

> For dwelling units, no more than 3,000 square feet or 10 percent of the site, whichever is greater, may be disturbed by structures or other land alteration, including grading, utility installations and landscaping but not including the area used for an onsite sewage disposal system.

(Hearing Examiner Decision at ¶ 20.) Applying the 2004 CAO, DDES determined that Mr. Manuchehri's application met all requirements of KCC 21A.24.070.B.4, including the 3,000 square foot disturbance area limitation. (Resp. (Dkt. # 53) at 2-3.) In an Order on Motions issued on March 5, 2009, however, the hearing examiner ruled that the language of the 2004 CAO could not logically be read to exclude driveways from the 3,000 square-foot calculation and, therefore, that Mr. Manuchehri's application exceeded this limitation. (*See* Hearing Examiner Decision at ¶ 14.) The Hearing Examiner's Opinion issued on May 28, 2009 affirmed this ruling. (*Id.*) The hearing examiner noted that, although DDES claimed its policy was to exclude driveways from the 3,000 square-foot calculation, the record did not reflect such a policy. (*Id.*) Rather, DDES had on at least one occasion included driveways in that calculation. (*Id.*) Moreover, DDES representative Harry Reinert's testimony indicated that DDES's proposal to the King County Council to amend the disturbance-area requirement was predicated on problems associated with the need to include driveways in the 3,000 square-foot calculation. (*Id.*)

## 2. 2008 Critical Area Ordinance Provision, KCC 21A.24.070 ("2008 CAO")

In October 2008, KCC 21A.24.070.B.4 was amended to its current form to allow for dwelling units fewer than 5,000 rather than 3,000 square feet and to expressly exclude driveways from the square-foot calculation. (*Id.*) In its current form, KCC 21A.24.070.B.4 states as follows:

> For dwelling units, no more than 5,000 square feet or 10 percent of the site, whichever is greater, may be disturbed by structures, building setbacks or other land alteration, including grading, utility installations and landscaping but not including the area used for a driveway or for an onsite sewage disposal system.

KCC 21A.24.070.B.4.

## 3. Hearing Examiner's Determination that RUEs do not vest and 2008 CAO Applies

The Hearing Examiner concluded that the vested rights doctrine – the purpose of which is to fix with reasonable certainty the rules to govern land development – did not apply and, therefore, the 2008 CAO was applicable to the Hearing Examiner Proceeding. (Hearing Examiner Decision at ¶¶ 26, 28.) He made this determination based on the following.

First, the hearing examiner determined that RUE provisions are procedural requirements, not developmental regulations subject to the vested rights doctrine. (*Id.* at ¶ 24.) He reasoned that the RUE process is a procedure for defining a development envelope, and the extent of critical area regulations applicable to that envelope which are to be enforced when an actual development permit is submitted. (*Id.*) Specifically, the King County RUE process describes procedures for removing or limiting prohibitions

and requirements, after which remaining prohibitions and requirements are applied to a project permit application. (*Id.* at 27.) Accordingly, the hearing examiner concluded that procedures to be followed in defining the framework for implementing a later development permit process cannot properly be described as development regulations subject to the vested rights doctrine. (*Id.* at ¶ 28.)

Second, based on his analysis of KCC 20.20.070, the vesting section of the King County Code chapter on procedures for land use permit applications, the hearing examiner concluded that the Manuchehri residential proposal vests to development regulations in effect on the date of the building permit application, not on the date of the RUE application. (*Id.* at ¶ 24.) He noted that KCC 20.20.070 deals specifically with the topic of application vesting and distinguishes between applications that directly authorize the alteration of land and applications that establish a conceptual framework for later alterations. (*Id.* at ¶ 23.) KCC 20.20.070 states that applications for Type 2 land use decisions, "except those which seek variance from or exception to land use regulations and substantive and procedural SEPA decisions, shall be considered under the zoning and other land use control ordinances in effect on the date a complete application is filed . . ." (*Id.*) KCC 20.20.070 further stipulates that "[v]esting of an application does not vest any subsequently required permits, nor does it affect the requirements for vesting of subsequent permits or approvals." (*Id.*) A RUE is a Type 2 land use decision that seeks an exception to land use regulations. (*Id.* at ¶ 24.) Consequently, the Hearing Examiner determined that a RUE qualifies as an application

ORDER- 8

for an exception that is *not* to be considered under the zoning and land use control ordinances in effect on the date of complete application. (*Id.*)

Goat Hill alleges that the hearing examiner "erroneously applies the 2008 CAO to Mr. Manuchehri's already granted and issued RUE." (Mot. at 4). Specifically, Goat Hill challenges the hearing examiner's conclusion that a RUE conceptually defines the framework for land development and therefore cannot be properly described as a development regulation subject to the vested rights doctrine and that KCC 20.20.070 excludes RUE applications from the vested rights doctrine. (*Id.* at 5.) Accordingly, Goat Hill moves to reverse and vacate the hearing examiner's decision on this basis.

4. <u>King County's RUE process is not a "development regulation" subject to the vested rights doctrine</u>

Washington courts define "development regulations" or "regulations" as "the controls placed on development or land use activities by a county or city, including, but not limited to, zoning ordinances, critical areas ordinances, shoreline master programs, official controls, planned unit development ordinances, subdivision ordinances, and binding site plan ordinances together with any amendments thereto." *City of Seattle v. Yes for Seattle*, 93 P.3d 176, 179 (Wash. Ct. App. 2004). A RUE is used when all reasonable uses of a site, as allowed by existing development standards, are denied as result of critical areas. *See* KCC 21A.24.070(B)(1). The RUE process is not a "control placed on land use activities by a county or city;" rather, it is a process by which such controls may, under specified circumstances, be removed. *See* KCC 21A.24.070; *Yes*, 93 P.3d at 179. Therefore, the hearing examiner did not erroneously interpret the law by

determining that the RUE process cannot be properly described as a "development regulation" or "regulation" subject to the vested rights doctrine. (*See* Hearing Examiner Decision at ¶¶ 27-28.)

5. <u>The hearing examiner's interpretation of KCC 20.20.070 is not contrary to the statute's plain language</u>

The hearing examiner did not erroneously interpret KCC 20.20.070 by determining that the Manuchehri residential proposal does not vest to development regulations in effect on the date of the RUE application, but rather vests to development regulations in effect on the date of the building permit application. *See* RCW 36.70C.130.

Where a question of statutory interpretation is resolved by examining the plain language of the statute, its structure, and purpose, the judicial inquiry is complete, and the statute's legislative history need not be consulted. *United States v. 475 Martin Lane*, 545 F.3d 1134, 1143 (9th Cir. 2008). KCC 20.20.070 provides as follows:

> A. Applications for Type 1, 2, and 3 land use decisions, *except those which seek variance from or exception to land use regulations* and substantive and procedural SEPA decisions shall be considered under the zoning and other land use control ordinances in effect on the date a complete application is filed meeting all the requirements of this chapter. . . .
>
> B. Vesting of an application does not vest any subsequently required permits, nor does it affect the requirements for vesting of subsequent permits or approvals.

KCC 20.20.070 (emphasis added).

A RUE is a Type 2 land use decision that seeks an exception to a land use regulation. *See* KCC 20.20.020; KCC 21A.24.070. Therefore, under the statute's plain

ORDER- 10

language, a RUE is specifically excepted from those land use decisions to be considered under the zoning or other land use control ordinances in effect on the date a complete application is filed. *See* KCC 20.20.070(A). Accordingly, under KCC 20.20.070, a residential proposal does not vest to ordinances in effect on the date the RUE application is filed.[2]

6. Conclusion

Based on the foregoing, the court holds that the hearing examiner's determination that the Manuchehri residential proposal vests on the date of the building permit application, and therefore the 2008 CAO applies, is not contrary to the statute's plain language. *See* KCC 20.20.020; KCC 21A.24.070; *Sylvester*, 201 P.3d at 387. The court therefore denies Goat Hill's motion to reverse and vacate the hearing examiner's decision (Dkt. # 22.)

**D. Goat Hill's LUPA Petition**

Goat Hill asks the court to declare that the "2006 Variance, the 2007 RUE, the 2008 DNS and the 2008 RUE are null and void and in violation of, without limitation, KCC 21A.24.070B, KCC 21A.24.100, KCC 21A.24.125, the Growth Management Act, the State Environmental Policy Act and the Land Use Petition Act." (Pet. Br. (Dkt. # 71)

---

[2] Testimony regarding DDES's policy with respect to the vesting of RUEs further supports the hearing examiner's determination. In his testimony on behalf of the King County Executive and DDES provided at the King County Hearing Examiner Proceedings, DDES Special Projects Manager, Harry Reinert, testified that DDES's policy is to consider a RUE application to have vested at the time when its attendant "anchor permit" – such as a building permit – vests. (First Reply Declaration of Robert A. Medved ("First Medved Decl.") (Dkt. # 65), Ex. E at 10:55 a.m. on April 15, 2009.)

at 5.) Goat Hill grounds this request on the argument that the DDES did not comply with any of the "CAO mandates." In support of its argument Goat Hill merely cites a few "select" examples of DDES's noncompliance but notes that the record is "replete" with more examples. (Pet. Br. at 9.) For example, Goat Hill relates to the court the following alleged noncompliance by the DDES:

> Even before the application for the 2007 RUE was filed on February 16, 2007, the DDES in a "Memo" dated December 13, 2006 ("2006 DDES Memo"), advised the Applicant that the DDES would require mitigation of wetland and stream impacts for any proposal under a new RUE application.
>
> The 2006 DDES Memo did not address or even mention the requirement that the Applicant must "avoid impacts to critical areas and critical area buffers."
>
> The 2006 DDES Memo did not address or even mention that "[A]ny authorized alteration to the critical areas or critical area buffer [must be] the minimum necessary to allow for reasonable use of" the Applicant's Property.

(Pet. Br. at 9-10.). Goat Hill also argues that DDES's November 7, 2007, and August 28, 2008, Reasonable Use Exception Reports and Decision do not "even refer to (let alone set forth the sequence requirements of KCC 21A.24.125), even in the section entitled 'APPLICABLE KING COUNTY CODES,' and do not contain the term 'avoid' or any derivative of the term 'avoid.'" (*Id.*) Goat Hill further complains that proposed alterations to the "stream" and "wetlands" could have been easily avoided and that the Site Plans upon which the 2007 RUE was issued on November 7, 2007, and reissued on August 28, 2008, only identify a small pipe or culvert in the stream on the King County 91st Place Northeast right-of-way," and that drainage plans were hidden by DDES employees. (*Id.*)

It is not clear from Goat Hill's petition how these alleged acts of noncompliance meet the standard of review by this court pursuant to RCW 36.70C.130. In fact, Goat Hill does not cite the standard of review set forth in LUPA. Nevertheless, as stated above, the court does not conduct a de novo review of the hearing examiner's decision but only grants relief if Goat Hill shows that the hearing examiner (a) used an unlawful procedure; (b) erroneously interpreted law; (c) made decisions not supported by the evidence; (d) erroneously applied the law to the facts; (e) acted outside the authority granted to the hearing examiner; or (f) violated the constitutional rights of the party seeking relief. *See* RCW 36.70C.130.

It is also difficult to discern from Goat Hill's petition the basis for its appeal of the hearing examiner's decision. King County, however, sheds light on the issues raised by Goat Hill and defines them as (1) whether Mr. Manuchehri's development proposal is the minimum necessary to allow for reasonable use of the property; (2) whether critical area impacts were properly addressed; and (3) whether drainage issues were adequately evaluated.[3] (Resp. Br. (Dkt. # 76) at 1-2.)

1. <u>Whether Mr. Manuchehri's development proposal is the minimum necessary to allow for reasonable use of the property</u>

There are two pertinent requirements at issue in analyzing the RUE issued to Mr. Manuchehri: (1) whether there were no other reasonable uses of the property with less adverse impact on the critical area; and (2) whether the alteration to the critical area

---

[3] The court agrees with King County that it lacks jurisdiction over Goat Hill's appeal of the 2006 Variance. (*See* Resp. Br. at 2.) This decision was appealed by Goat Hill in 2006 and affirmed by the King County Superior Court shortly thereafter.

ORDER- 13

buffer is the minimum necessary to allow for reasonable use of the property.  *See* KCC 21A.24.070.B.1 & .3.  Goat Hill seems to concede that Mr. Manuchehri's proposed single-family home is a reasonable use of the property.  Such a concession is likely dictated by the fact that (1) the property at issue is zoned for a multi-family unit, and (2) the surrounding property, including Goat Hill's property, is made up of multi-unit condominium and apartment complexes.  The crux of Goat Hill's appeal on this issue seems to relate to whether the development proposal is the minimum necessary to allow for reasonable use of the property.

The hearing examiner, citing *Buechel v. State Dep't of Ecology*, 884 P.2d 910 (Wash. 1994), approached the question of whether the proposal is minimally necessary for a reasonable use by looking at the character of the neighborhood, the zoning designation, and the type and character of the critical area at issue.  (Hearing Examiner's Decision at ¶ 31.)  After hearing from all the witnesses and reviewing the testimony regarding these factors, the hearing examiner determined that Mr. Manuchehri's proposed home represented an acceptable use of the property.  There is nothing in the record identified by Goat Hill to support overturning the hearing examiner's findings on these issues.  Accordingly, the court denies Goat Hill's request to overturn the hearing examiner's decision that the development proposal and variances were the minimum necessary to allow for reasonable use of the property.

2.  <u>Whether critical area impacts were properly addressed</u>

Goat Hill next argues that the hearing examiner erred by failing to understand the significant differences between certain provisions of the King County Code.

ORDER- 14

Specifically, Goat Hill contends that the hearing examiner failed to distinguish between KCC 2A.24.070B.1 ("no other reasonable use with less adverse impact . . . ."); KCC 21A.24.070B.3 ("any authorized alteration . . . is the minimum necessary to allow for reasonable use of the property"); KCC 21A.24.070B.4 (""no more than three thousand square feet . . . may be disturbed by . . . land alteration . . . ."); and KCC 21A.24.125A.2 ("minimizing the impact"). (Pet. Br. at 13-14.) As a result of this failure, Goat Hill contends that the hearing examiner "wrongfully concluded that 'the proposed project will be the minimum impact on the critical area to all for reasonable use of the property' – a conclusion that is not based on any facts but is contrary to all proven facts." (*Id.* at 14.) Goat Hill does not address any of the substantive findings made by the hearing examiner on the issue of impact on critical areas. Nor does Goat Hill explain how the hearing examiner's decision is "contrary to all proven facts."

While King County sets forth a detailed explanation of how the hearing examiner determined that Mr. Manuchehri's development proposal ensured that impacts to the critical areas were minimized to the extent possible, (*see* Pet. Br. at 16), the procedural nature of this appeal places the burden of establishing a basis for reversal on Goat Hill. *See* RCW 36.70C.130(1). The court has considered Goat Hill's legal contentions and record cites with respect to the hearing examiner's decision on the critical areas impact analysis and cannot find any basis for reversal. Accordingly, the court denies the petition on this contention.

3. <u>Whether drainage issues were adequately evaluated.</u>

Finally, the court considers Goat Hill's allegations that the hearing examiner failed to address properly the drainage plans submitted by Mr. Manuchehri as part of his RUE application. After the November 7, 2007 RUE was issued, Mr. Manuchehri submitted a drainage plan in July 2008. (Pet. Br. at 11.) Goat Hill seems to argue that the drainage plan identified for the first time "actual significant alterations and impacts on" Mr. Manuchehri's property that were not considered or evaluated before the issuance of the RUE. (*Id.*) Goat Hill further contends that the drainage plans were "hidden by a DDES employee," and not disclosed to the public until January 2009. (*Id.*)

Goat Hill again fails to cite to any legal authority supporting the notion that the King County Code requires a drainage plan prior to the issuance of the RUE. Nor does Goat Hill provide any factual support for the allegation that a DDES employee purposefully "hid" the drainage plan from the public until January 2009. The court, having reviewed the Verbatim Report of Proceedings ("VRP") filed in this matter, cannot find any support for Goat Hill's challenges to the RUE based on the absence of a drainage plan. The evidence in the VRP is that the drainage plan is created as part of the building permit process and not the RUE. (*See* VRP at 584:1-8; 584:15-23 (DDES employee explaining that the drainage plan is "conceptual" and not something DDES approves as part of the RUE but rather a criteria for obtaining a building permit).) Based on Goat Hill's failure to support its contentions that the drainage plan was legally required as part of the RUE process, or surreptitiously withheld from the public until 2009, the court denies the petition as to these claims of error.

ORDER- 16

### E. SEPA Appeal

Goat Hill also requests that the court consider its appeal of DDES's determination of non-significance ("DNS") pursuant to the State Environmental Policy Act ("SEPA"). The hearing examiner, however, determined that Goat Hill did not file a timely appeal of the SEPA DNS. (Hearing Examiner Decision at ¶ 22.) Goat Hill disputes the examiner's determination and argues that Michael and Patricia Stupfel (the "Stupfels") properly appealed the SEPA decision and then assigned their rights to Goat Hill. In support of this "vicarious" appeal, Goat Hill presented the hearing examiner with a signed statement signed by Michael Stupfel that reads as follows:

> I Michael M. Stupfel on behalf of myself and my wife, Patricia A. Stupfel, authorize Goat Hill Manor Homeowners Association to use all documents, files, and other related materials as to all issues and in all regards in . . . all DDES actions regarding Reasonable Use Exception and SEPA.

(*Id.* at ¶¶ 16, 22.)

The hearing examiner concluded that the Stupfels' statement adequately conveyed their intent to authorize Goat Hill to represent them in pursing both the RUE and SEPA appeals. (*Id.*) The hearing examiner noted that the Rules of Procedure of the King County Hearing Examiner Rule X is liberal in authorizing and encouraging such cross-representation. (*Id.*) Rule X.B. provides that "any person, group, or organization may be assisted by any person of his, her or its choosing for the purpose of presenting written or oral arguments, entering exhibits, or otherwise participating in a hearing." (*Id.*) It further provides that the examiner "will make reasonable accommodations and allowances to assure that persons unfamiliar with these proceedings are enabled to participate

effectively." (*Id.*) The hearing examiner concluded that these provisions give the examiner considerable discretion to determine when a representational relationship exists and concluded that such a relationship existed in this case. (*Id.*)

The hearing examiner's decision, however, failed to address the fact that only the Stupfels – and not Goat Hill – actually filed a SEPA appeal. (*Id.* at ¶¶ 6-7.) Thus, although Goat Hill was authorized, under Rule X, to represent Stupfels in the underlying proceedings in which both Goat Hill and the Stupfels were parties, Goat Hill does not have standing to pursue the SEPA claims on its own behalf. The court finds Goat Hill's failure to file its own appeal of DDES's SEPA decision amounts to a failure to exhaust administrative remedies. *See* RCW 36.70C.060. Goat Hill was authorized only to act in a representative capacity on behalf of the Stupfels with respect to the SEPA appeal. *See* Rules of Procedure of the King County Hearing Examiner § X.B. Thus, Goat Hill had no independent standing to pursue the SEPA appeal and the hearing examiner's jurisdiction over the SEPA issue was based solely on the Stupfels' SEPA appeal. Consequently, Goat Hill's claims with respect to SEPA are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Goat Hill's motion to reverse and vacate (Dkt. # 22) and DENIES Goat Hill's LUPA petition (Dkt. # 71). The court directs the parties to file an amended Joint Status Report and Discovery Plan addressing the schedule for discovery and trial on Goat Hill's federal claims. The amended Joint Status Report and Discovery Plan shall be filed no later than noon on January 22, 2010. The

court also directs Goat Hill to address whether the remaining Defendants have been served.

Dated this 12th day of January, 2010.

      _____
      JAMES L. ROBART
      United States District Judge

ORDER- 19